Curia, per

O’Neall, J.
This case has been twice tried, and, in my judgment, is about as plain a case as ever was presented to a Court and jury. It is susceptible of two views : 1st, either the plaintiffs bought the cotton for, and delivered it to Shannon, thus making a sale of it by them to him ; or, 2d, they bought it for him and paid for it in the whole or in part. In either of these points of view, it is a case of facts merely ; and the only inquiry would be, do the facts justity either of them ? That the plaintiffs bought the cotton for Shannon, and at his request, is unquestionable. It was proved by Walter and Cotchett, from whom it was bought. Was it delivered to him ? About that, it seems to me, there can be as little question. He designated the vessel in which it was to go, (the barque Joseph»,) in which he had taken his own passage ; the captain of the Josepha said that the plaintiffs shipped the cotton for the defendant; he, the defendant, was along side, when it was going on board; and when one of the plaintiffs said to him that another person *113 was willing to take one hundred bags, he replied, “ he would try the whole for luck.” He did not object until the whole cotton was on board, and then indeed he refused to comply with his contract.
If these facts do not prove a delivery, then I confess I cannot say what could prove it. But here it is said the defendant did right in refusing to comply with his contract, inasmuch as by the arrangements made by the plaintiffs, he had not the control of the cotton. This is a mere specious presentation of a defence, which cannot be sustained. The defendant had not quite money enough to buy one-fourth of the *eotton which he desired. To obtain the quantity bought, an advance had to be procured by the plaintiffs. This was stated to him ; and after the finding of the jury, we must take it he fully understood it. According to the course of trade, fully proved in both trials, the cotton is shipped in the name of the person making the shipment in fact, and is consigned to the firm in England who are the correspondents of the party here making the advance.
The shipment thus made is to pay, first, the advance; second, the charges of the shippers, if any ; and the balance to the real owner. His name does not appear in the bill of lading, but in the invoice accompanying the cargo.
In this way, the rights of all parties are secured. All these things were done on this occasion. There is, therefore, nothing in this matter which can discharge the defendant. It is, however urged, that when the defendant refused to comply, the plaintiffs ought to have sold the cargo here, and thus a loss would have been prevented. It would be enough here to say. they had discharged their duty, and the cotton was at the defendant’s risk. They had procured or contracted for the advance $12,410; they had bought the cotton for, and delivered it to him. Their power over it, except to send it forward according to the course of trade was ended. The defendant, if he had thought proper, could have had the entire control, by paying the whole price of the cotton ; or if he had paid the difference between the advance and the price, he could have gone on with the cotton ; and in Liverpool, he would have received the proceeds, after paying the advance, the freight, and the shipper’s charges. That he did neither of these, is the defendant’s misfortune ; it is that which deprives him of liberty, and which will deprive him of the earnings of his life. Looking at the case as a sale by the plaintiffs to the defendant, they ought to.have had a verdict for the whole price of the cotton, $16,294 ; but the jury for the present might suppose that the cotton in Liverpool did not quite cover the advance, (for Mr. Worther-spoon said the sales were not equal to it,) and deduct on that account $12,294, which would leave a balance of $4,000 the amount found by their verdict This would still leave the defendant liable for any sum which the plaintiffs may be compelled to pay to Trapman on account of the advance, after deducting from it the *nett sales in Liverpool. But concede that the jury erred, and that the plaintiffs were entitled to receive $16,294, and they are content with the verdict of $4000, surely the defendant ought not to complain. Consider the case, however in the other point of view. The plaintiffs were mere brokers ; they bought the cotton for the defendant at his request. The persons selling it would not sell to Shannon ; they sold to the plaintiffs, and *114 charged them with it. They had no claim whatever on the defendant. Here, surely it cannot be denied, that money paid by them, on this account, was money paid, laid out and expended for the defendant, and at his request. For the obligation was incurred for him, and they were legally liable to pay for him. It is the common case of two persons going into a store, one of them wishes goods, the merchant will not sell to him ; the third person says, let him have them on my account; it is done, and they are charged to the third person, and his liability to pay is beyond all question, and certainly when he does pay, he can compel the party to whom the goods were delivered to pay him. Indeed, I think, notwithstanding the former opinion in this case, that when it was shown here, that the plaintiffs bought the cotton for the defendant, that the venders refused to credit him, and charged it to them, that this was as much a payment for his use, as if it had been made in gold or silver. But that is not necessary for this case, and I only state the position that that opinion may not even impliedly have my sanction. To pay for the cotton, the plaintiffs applied to Trapman for an advance, and got $12,410. This did not pay for the cotton by $4000. They had previously paid this last sum. If even the 12,470, could in any shape be regarded as Shannon’s, they had the right to say that sum is to be applied to the balance still due for the cotton, leaving the $4000 previously paid by them unsatisfied, and for it they were entitled to a verdict. But in point of fact, the money got from Trapman was a loan to them secured by their principal’s cotton. For Wotherspoon, Trapman’s agent, said I did not know Shannon in the transaction, further than that the plaintiffs were buying the cotton for him, and would pledge it for the repayment of the advance. This, by the usage of trade, they had a right to do. If the principal’s cotton paid the advance, it was very well ; but if not, the parties procuring it must, as a matter of course, pay any ^deficit, Considering the case in this way, it is perfectly immaterial whether the money paid by them was from their own or borrowed funds ; still it was paid by them, and they are entitled to recover.
The motion is dismissed.
Butler, Evans and Earle, JJ., concurred. Gantt, J., dissented.